IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

TRU CREDITOR LITIGATION TRUST,
    Plaintiff,

    v.                                                        Civil No. 3:20cv311 (DJN)

DAVID A. BRANDON, *et al.*,
    Defendants.

## MEMORANDUM OPINION

This case arises out of the bankruptcy proceedings of Toys "R" Us, Inc., and its affiliates. It involves an adversary proceeding brought against the former executives of Toys "R" Us for their alleged actions taken leading up to and during the bankruptcy case. This matter comes before the Court on the Bankruptcy Court's Report and Recommendation (("R&R") ECF No. 45)), recommending that the Court allow Plaintiff TRU Creditor Litigation Trust (the "Trust") to withdraw its Motion to Designate, that the Court not withdraw the reference to the Bankruptcy Court and that the Court find that the Trust has waived its right to a jury trial on certain claims. The Trust has objected to the R&R. For the reasons set forth below, the Court will SUSTAIN the Trust's objections.

## I.     BACKGROUND[1]

### A.    The Underlying Bankruptcy Proceedings

On September 18 and 19, 2017, Toys "R" Us, Inc. and twenty-four of its affiliates (collectively, "TRU" or the "Debtors") filed voluntary Chapter 11 petitions in the United States

---

[1]    Unless otherwise cited, the Court takes these facts from the Bankruptcy Court's Report and Recommendation issued on April 4, 2022.

Bankruptcy Court for the Eastern District of Virginia.  The Bankruptcy Court consolidated the cases into *In re: Toys R Us, Inc., et al.*, Case No. 17-34665, for joint administration.[2]  United States Bankruptcy Judge Keith L. Phillips presided over the case.

On March 22, 2018, the Bankruptcy Court entered an order authorizing TRU to wind down U.S. operations, authorizing store closures, establishing administrative claims procedures and granting other relief.  On July 17, 2018, in connection with the wind-down, TRU filed a Settlement Agreement (Bankr. Dkt. No. 3814) entered into by and among multiple parties.  The Settlement Agreement resolved numerous issues relating to the liquidation of TRU's U.S. businesses and provided for the release of all claims by the parties against the other parties.  The Settlement Agreement established a Non-Released Claims Trust that would administer all non-released claims, including claims held by TRU and its creditors against TRU's directors and officers.  The Bankruptcy Court approved the Settlement Agreement on August 8, 2018.

On December 17, 2018, the Bankruptcy Court confirmed the Third Amended Chapter 11 Plan of TRU.  On April 30, 2019, the Debtors filed the Non-Released Claims Trust Agreement.  That Agreement established the TRU Creditor Litigation Trust (the "Trust") as the successor-in-interest to the Debtors for all non-released claims.

### B.    The Adversary Proceeding

On March 12, 2020, the Trust initiated this case, filing its Director & Officer Complaint against Defendants in the Supreme Court of the State of New York.  The Trust brings these claims against Defendants David Brandon, Joshua Bekenstein, Matthew Levin, Paul Raether, Nathaniel Taylor, Joseph Macnoew, Wendy Silverstein, Richard Goodman, Michael Short and

---

[2]    The Court will cite to the docket in the underlying bankruptcy case as "Bankr. Dkt."

Richard Barry (collectively, "Defendants") as former executives of TRU. Defendants removed the case to the United States District Court for the Southern District of New York, which then transferred it to this Court. On May 5, 2020, the Court referred the case to the Bankruptcy Court, which opened the Adversary Proceeding as Case No. 20-3038-KLP (Bankr. E.D. Va.). [3]

In the Second Amended Complaint ("Am. Compl." (AP Dkt. No. 146)), the Trust brings Counts One through Four for breach of fiduciary duty (the "Fiduciary Breach Claims") on behalf of TRU and Counts Five through Nine on behalf of TRU's trade vendors (the "Vendor Claims"). In Count One, the Trust alleges that Defendants breached their fiduciary duties by authorizing the payment of advisory fees to TRU's private equity shareholders from the fourth quarter of 2014 through the first quarter of 2017. (Am Compl. ¶¶ 207-12.) In Counts Two and Three, the Trust alleges that Defendants breached their fiduciary duties by authorizing pre-petition retention payments to 114 executives before the commencement of the bankruptcy proceeding. (Am. Compl. ¶¶ 213-25.) In Count Four, the Trust alleges that Defendants breached their fiduciary duties by taking on debtor-in-possession ("DIP") financing at the start of the bankruptcy proceeding. (Am. Compl. ¶¶ 226-32.)

In the Vendor Claims, the Trust alleges that Defendants misrepresented facts concerning TRU's ability to make payments for post-petition goods and services to induce trade vendors to ship goods to TRU on credit. Specifically, Count Five alleges Fraudulent Inducement (Am. Compl. ¶¶ 233-39); Count Six alleges Negligent Concealment and Negligent Omission (Am. Compl. ¶¶ 240-48); Count Seven alleges Fraud, Misrepresentation, and Deceit (Am. Compl. ¶¶ 249-54); Count Eight alleges Negligent Misrepresentation (Am. Compl. ¶¶ 255-61); and Count Nine alleges Negligence (Am. Compl. ¶¶ 262-65.) In the Demands for Relief in the

---

[3]    The Court will cite to the docket in the adversary proceeding as "AP Dkt."

Complaint, the First Amended Complaint, and the Second Amended Complaint, the Trust demands an "award of money damages in an amount sufficient to compensate for the losses resulting from Defendants' wrongful conduct" and other monetary relief along with a "jury trial on all matters subject to jury trial."

On October 5, 2020, the Court entered the Parties' Agreed Proposed Discovery Order and Schedule. ("Scheduling Order" (AP Dkt. No. 67).) The Scheduling Order included a deadline of April 29, 2021, to file a "waiver of jury trial or motion re: right to jury trial." Despite extending several other deadlines, the Court never modified this particular deadline. Additionally, the Scheduling Order includes the following provision: "The parties consent to Judge Phillips for all pretrial proceedings. If the case proceeds to trial, the parties further agree that they would consent to Judge Phillips as the trial judge, whether the trial is a bench trial or a jury trial." Both parties endorsed the Scheduling Order.

On April 10, 2021, the Trust filed a "Motion for Jury Demand" wherein it sought "an order ruling that there has not been a waiver of the Trust's right to a jury trial on the claims asserted against Defendants and that the Trust has the right to demand a trial by jury." ("First Jury Trial Motion" (AP Dkt. No. 134).) Defendants opposed, arguing that the Settlement Agreement waived the right to a jury trial. (AP Dkt. No. 141.) On September 3, 2021, the Court granted the motion, ordering "that the motion of Plaintiff TRU Creditor Litigation Trust requesting a jury trial is GRANTED." (AP Dkt. No. 257.) In the accompanying Memorandum Opinion ("First Bankr. Op." (AP Dkt. No. 256)), the Bankruptcy Court ruled that Defendants had not carried their burden to establish that the Trust had waived its right to a jury and held that the "Trust is entitled to have a jury trial on the Complaint." (First Bankr. Op. at 8-9.)

On November 23, 2021, the Trust filed a Motion for an Order that Plaintiff is Entitled to

a Jury Trial on All Asserted Claims, seeking an order that "the Trust is entitled to a jury trial on all claims asserted in its Second Amended Complaint." ("Second Jury Trial Motion" (AP Dkt. No. 304).) On March 31, 2022, the Bankruptcy Court ruled that the Trust does not have the right to a jury trial on the Fiduciary Breach Claims, because it had not filed the Second Jury Trial Motion before the April 29, 2021 deadline. However, it determined that it does have the right to a jury trial on the Vendor Claims. (("Second Bankr. Op.") (AP Dkt. No. 416).)

On December 13, 2021, Defendants filed a Motion for Summary Judgment (AP Dkt. No. 315). The parties have fully briefed the Motion for Summary Judgment and the Bankruptcy Court held oral argument on February 23, 2022. This Court instructed the Bankruptcy Court to resolve the Summary Judgment Motion, as well as all other pending motions, by July 1, 2022. (ECF No. 44.)

On January 4, 2022, the Trust filed an Unopposed Motion to Specially Designate Bankruptcy Judge to Preside Over Jury Trial ("Motion to Designate" (ECF No. 16)), seeking to have the Court designate Bankruptcy Judge Phillips to preside over a jury trial in the Adversary Proceeding pursuant to 28 U.S.C. § 157(e). The Court referred the motion to the Bankruptcy Court, which recommended that the Court grant the Motion. (ECF Nos. 17, 19.) Defendants filed a limited objection to the Bankruptcy Court's recommendation to preserve their challenge to the Trust's right to a jury trial on the claims. (ECF No. 20.) Thereafter, on March 22, 2022, before a ruling on the Motion, the Trust filed a Notice of Withdrawal of Motion to Specially Designate Bankruptcy Judge to Preside Over Jury Trial ("Notice of Withdrawal" (ECF No. 21)), seeking to withdraw its Motion to Designate, because it believed that the District Court could provide a sooner trial date. The Court referred the Notice of Withdrawal to the Bankruptcy Court for a Report & Recommendation. (ECF No. 44.) In the referral order, the Court ordered

the Bankruptcy Court to include a recommendation as to (1) whether to allow the Trust to withdraw the Motion to Designate; (2) whether the Trust has a right to a jury trial on each of the claims asserted in the Second Amended Complaint; (3) whether the Court should withdraw the Order of reference to the Bankruptcy Court; and (4) whether each claim in the Second Amended Complaint constitutes a core or non-core claim under *Stern v. Marshall*, 564 U.S. 462 (2011). (ECF No. 24.)

### C.    The Bankruptcy Court's Report & Recommendation

On April 4, 2022, the Bankruptcy Court issued its Report & Recommendation, making the following recommendations. The Bankruptcy Court determined that the factors did not favor withdrawal of the reference. Specifically, the Bankruptcy Court determined that all of the claims constitute core proceedings. (R&R at 10-11.) The Bankruptcy Court further determined that none of the other factors favored withdrawal. (R&R at 11, n.31.) However, should the Court decide to withdraw the reference, the Bankruptcy Court recommended that it wait until after the resolution of the pending Summary Judgment Motion. (R&R at 13.)

Additionally, the Bankruptcy Court reiterated its finding that the Trust had waived its right to a jury trial on the Fiduciary Breach Claims but not the Vendor Claims. (R&R at 13.) Finally, the Bankruptcy Court recommended that the Court allow the Trust to withdraw its Motion to Designate. (R&R at 14.) The Bankruptcy Court raised additional issues that the parties did not raise and that it did not make a final recommendation on, such as the retention of jurisdiction in the Bankruptcy Court found in Article XI of the confirmed Chapter 11 plan. (R&R at 12.)

On April 14, the Trust objected to the R&R. (Plaintiff Trust's Objection to Report and Recommendation ("Trust's Mem.") (ECF No. 53).) Specifically, the Trust objected to the

6

determination that it had waived its right to a jury trial on the Fiduciary Breach Claims. (Trust's Mem. at 1-12.) Additionally, the Trust objected to the recommendation that the reference should not be withdrawn, especially because the Trust argues that the claims constitute non-core claims. (Trust's Mem. at 14-24.) Defendants did not object to any portion of the R&R, but they did file a response to the Trust's objections. (Defs' Opp. to Pl.'s Obj. to Report and Recommendation ("Defs' Mem.") (ECF No. 54).) The Trust filed a Reply (ECF No. 55). On May 11, 2022, the Court held a hearing on Plaintiff's objections. Consequently, this matter is now ripe for review.

## II.    STANDARD OF REVIEW

Federal Bankruptcy Rule 9033(d) sets forth the standard for this Court to apply when reviewing objections to a Bankruptcy Court's proposed findings of fact and conclusions of law: "The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(d).

Although the Trust objects to certain specific factual findings, the Trust's objections boil down to two main arguments: (1) that the Bankruptcy Court erred in its application of several of the factors that guide the review of a motion to withdraw; and (2) that the Bankruptcy Court erred in finding that it did not have the right to a jury trial on its breach of fiduciary claims. Accordingly, the Court will conduct a de novo review of the objected-to factors governing withdrawal motions. Because the factors governing withdrawal include the right to a jury trial, the Court will address the Trust's objections to the jury trial determination in the context of the withdrawal analysis.

### III.   ANALYSIS

Federal district courts exercise "original and exclusive jurisdiction of all cases" under the Bankruptcy Code.  28 U.S.C. § 1334(a).  District courts may refer all bankruptcy matters to bankruptcy judges, which this District has done as a matter of course since 1984.  28 U.S.C. § 157(a); *see In the Matter of: The Administration of the Bankruptcy Courts and Reference of Bankruptcy Cases and Proceedings to the Bankruptcy Judges of this District* (E.D. Va. Aug. 15, 1984) (Standing Order referring all bankruptcy matters to Bankruptcy Court).  However, district courts may, and sometimes must, withdraw the reference of such proceedings in whole or part. 28 U.S.C. § 157(d).  "Bankruptcy law provides two avenues by which a district court can order a case withdrawn from the bankruptcy court:  mandatory withdrawal or permissive withdrawal." *Shaia v. Malone*, 2017 WL 4203544, at *3 (E.D. Va. Sept. 21, 2017) (citing 28 U.S.C. § 157(d)). The district court <u>must</u> withdraw the reference when "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  Alternatively, the district court <u>may</u> withdraw the reference for "cause shown."  *Id.*  A party seeking an order from the district court withdrawing a matter filed in an underlying bankruptcy action may file a motion to withdraw the reference, which neither side has yet filed here.  The movant bears the burden of demonstrating the appropriateness of withdrawal — whether mandatory or discretionary.  *In re U.S. Airways Grp., Inc.*, 296 B.R. 673, 677 (E.D. Va. 2003).

Bankruptcy law allows for discretionary withdrawal "for cause shown," but does not define "cause."  28 U.S.C. § 157(d).  Courts in this district weigh six factors in determining whether cause exists to withdraw the reference.  *U.S. Airways*, 296 B.R. at 681.  These factors include:

8

(i) whether the proceeding is core or non-core;

(ii) the uniform administration of bankruptcy proceedings;

(iii) expediting the bankruptcy process and promoting judicial economy;

(iv) the efficient use of debtors' and creditors' resources;

(v) the reduction of forum shopping; and

(vi) the preservation of a right to a jury trial.

*Id.*; *see also Chesapeake Trust v. Chesapeake Bay Enters., Inc.*, 2014 WL 202028, at *4 (E.D.

Va. Jan. 17, 2014) (assessing same factors). Although some courts place great weight on the

core/non-core factor, "[t]he better view is that discretionary withdrawal of reference should be

determined on a case-by-case basis by weighing all the factors presented in a particular case,

including the core/non-core distinction." *Shaia*, 2017 WL 4203544, at *4 (internal quotations

omitted). If the district court determines that the balance of factors indicate that the interests of

justice and judicial economy favor litigation in the district court, the district court should

exercise its discretionary power of withdrawal. *Chesapeake Trust*, 2014 WL 202028, at *4

(citing *In re QSM LLC*, 453 B.R. 807, 809-10 (E.D. Va. 2011)).

Here, although the parties dispute several of the factors, the disputes over the core/non-

core determination and right to a jury trial drive the analysis. The Court will address these two

factors first before discussing the others.

### A.    The Core/Non-Core Factor

The Bankruptcy Court found that all of the claims present core issues, a finding that

Defendants support. The Trust objects to this finding, arguing that all of the claims constitute

non-core claims. The Court will first review the standard for making the core/non-core

determination before applying that standard to each claim.

9

When a case gets referred to a bankruptcy court, "the manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved." *Stern v. Marshall*, 564 U.S. 462, 473 (2011). "Congress has divided bankruptcy proceedings into three categories: (1) those that arise under title 11, (2) those that arise in a title 11 case, and (3) those that are related to a case under title 11." *Chesapeake Trust*, 2014 WL 202028, at *2 (citing *Stern*, 564 U.S. at 473). The first two categories constitute statutory "core proceedings" such that the statute permits a bankruptcy judge to "hear and enter final judgments." *Stern*, 564 U.S. at 474. With respect to non-core proceedings, a bankruptcy judge "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," but, unless the parties consent, the bankruptcy judge cannot enter final judgments and instead must submit "proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1).

Section 157 sets forth a non-exhaustive list of examples of core proceedings. The list includes, for example, "matters concerning the administration of the estate," and "proceedings to determine, avoid, or recover fraudulent preferences." 28 U.S.C. § 157(b)(2)(A), (H). A party may appeal the final judgment of a bankruptcy court to the district court, which reviews it under traditional appellate standards. 28 U.S.C. § 158(a); Fed. R. Bankr. Proc. 8013. However, when a bankruptcy judge determines that a "proceeding . . . is not a core proceeding but . . . is otherwise related to a case under title 11," the bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court," which then reviews de novo any matter to which a party objects. 28 U.S.C. § 157(c)(1).

However, some claims qualify as statutorily core but not constitutionally core. *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 35 (2014) ("*Stern* made clear that some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court in the manner

10

designated by § 157(b)."). "Before a bankruptcy court can enter a final judgment on a statutorily

core claim, it must also determine that the claim is constitutionally core." *Educ. Credit Mgmt.*

*Corp. v. Pulley*, 532 B.R. 12, 23 (E.D. Va. 2015) (citing *Stern*, 564 U.S. at 481). "It is the

bankruptcy court's responsibility to determine whether each claim before it is core or non-core."

*Arkison*, 573 U.S. at 33. In determining the core or non-core nature of a proceeding, a "[c]ourt

identif[ies] the nature of the cause of action itself, and whether the action invokes a right under

title 11 or that arose in a case under title 11." *Chesapeake Trust*, 2014 WL 202028, at *3. The

statute dictates that a proceeding does not become a non-core proceeding "solely on the basis

that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). "A cause of action is

constitutionally core when it 'stems from the bankruptcy itself or would necessarily be resolved

in the claims allowance process.'" *Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 448

(E.D. Va. 2019) (quoting *Stern*, 564 U.S. at 499). A claim "stems from the bankruptcy itself"

when it "assert[s] a right of recovery created by federal bankruptcy law" or is "derived from or

dependent upon bankruptcy law." *Stern*, 564 U.S. at 498-99. A bankruptcy estate's claim

against a creditor "would necessarily be resolved in the claims allowance process when it shares

common questions of fact and law with the creditor's claims and when it seeks to directly reduce

or recoup the amount claimed." *Allied Title*, 420 F. Supp. 3d at 448. (internal quotations

omitted). A claim can become core when it "become[s] integral to the restructuring of the

debtor-creditor relationship." *Stern*, 564 U.S. at 497. Conversely, claims by the bankruptcy

estate that seek to "augment the estate" but do not "directly modify the amount claimed" do not

qualify as a core claim "to be resolved in ruling on the proof of claim." *Allied Title Lending,*

*LLC*, 420 F. Supp. 3d at 448.

When confronted with a so-called *Stern* claim — "a claim designated for final

11

adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter," — the bankruptcy court should proceed with the claim as it would for non-core claims. *Arkison*, 573 U.S. at 30-31. That requires the bankruptcy court to "determine whether the claim may be adjudicated as a non-core claim — specifically, whether it is 'not a core proceeding' but is 'otherwise related to a case under title 11.'" *Id.* at 36. If it satisfies the "otherwise related to a case under title 11" standard as required by 28 U.S.C. § 157(c)(1), then the bankruptcy court "should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment." *Id.* at 36. Of course, if the claim has no relation to a case under title 11, then the bankruptcy court lacks any authority to act on it.

  *Stern* teaches that courts should focus on the content of the proceeding rather than the category of the proceeding when determining whether a bankruptcy court has acted within its constitutional authority. The *Stern* Court explained that claims that do not "stem[] from the bankruptcy itself or would [not] necessarily be resolved in the claims allowance process" must be decided by Article III courts. *Stern*, 564 U.S. at 497. The Court never declared that all counterclaims by a debtor fall outside of a bankruptcy court's jurisdiction. Instead, the Court looked to the content of the debtor's counterclaim and compared the factual and legal determinations necessary to resolve the counterclaim to those necessary to resolve the original claim. *Id.* at 498-99. It did so to assess whether the counterclaim would necessarily be resolved in the claims-allowance process. *Id.* In doing so, the Court focused on the basis for the counterclaim to determine whether it stemmed from the bankruptcy itself. *Id.* "Given *Stern's* focus on the content of the claim over its categorization, courts cannot bypass the constitutional limitations simply by categorizing a widely varying swath of claims as 'core' and then assuming

12

jurisdiction over them." *Patterson v. Mahwah Bergen Retail Group, Inc.*, 636 B.R. 641, 669 (E.D. Va. 2022).

The Bankruptcy Court determined that all of the claims constitute core claims. Specifically, the Bankruptcy Court found that the Fiduciary Breach Claims "target acts taken by the Defendants in preparation for and at the start of the bankruptcy filing." (R&R at 10.) Additionally, the "Vendor Claims concern the Debtors' allegedly improper acts taken during the course of the bankruptcy with respect to trade vendors." (R&R at 10.) Thus, according to the Bankruptcy Court, "[s]ince all allegations in the Complaint implicate acts taken by the Defendants in preparation for and in connection with the bankruptcy, they could only arise in the context of a bankruptcy case and are, therefore, core." (R&R at 10-11.) Defendants agree with this classification, largely on the basis that many of the claims occurred before or during the bankruptcy and concern the administration of the estate. (Defs' Mem. at 2-5.)

However, a claim does not become core "simply because a proceeding may have *some* bearing on a bankruptcy case." *Stern*, 564 U.S. at 499. Indeed, a claim's factual entanglement with the bankruptcy case will not suffice. Rather, it must legally intertwine with the bankruptcy case. *In re Renewable Energy Develop. Corp.*, 792 F.3d 1274, 1279-80 (10th Cir. 2015) ("As we see it, the only 'intertwining' *Stern* cares about concerns the law, not the facts."). This legal intertwinement occurs where a final ruling on the claim "is a central part of the restructuring of the debtor-creditor relationship." *Pulley*, 532 B.R. at 24. Accordingly, the Court will examine each claim to determine whether it stems from the bankruptcy itself or if it would be resolved in the claims resolution process.

### 1.  Count One

In Count One, the Trust alleges that Defendants breached their fiduciary duties by

authorizing TRU to pay advisory fees totaling approximately $17.8 million to TRU's private equity sponsors from the fourth quarter of 2014 through the first quarter of 2017. This breach of fiduciary duty claim arises under state law that does not flow from a federal statutory scheme. Moreover, this claim does not form a central part of the restructuring of the debtor-creditor relationship. Importantly, all of the challenged actions occurred before the filing of the bankruptcy petition on September 19, 2017. "It seems self-evident that a claim . . . that pre-dates the filing of the Chapter 11 case cannot be said to have arisen within that case, and whether it caused the bankruptcy is immaterial." *Valley Historic Ltd. Partnership v. Bank of New York*, 486 F.3d 831, 836 (4th Cir. 2007). Additionally, the claims allowance process — which has since ended — did not resolve these claims. Defendants have given no reason to believe that any future claims allowance process will occur or that it would resolve these claims.

Defendants argue that this claim constitutes a fraudulent conveyance claim and, therefore, constitutes a core claim under 28 U.S.C. §§ 157(b)(2)(A) and (H). (Defs' Mem. at 4-5.) Even if the Court construes it as a fraudulent conveyance action, the Supreme Court in *Stern* suggested that fraudulent conveyance cases involve private rights and must be adjudicated by Article III courts. *See Stern*, 564 U.S. at 492 n.7 ("Our conclusion [in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)] was that . . . Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court."). Defendants also argue that the allegations that the breach of fiduciary duty contributed to the bankruptcy renders it core, but this flips the test on its head. To be core, the bankruptcy case must give rise to the claim, rather than the facts of the claim giving rise to the bankruptcy. *See Valley Historic*, 486 F.3d at 836 ("Indeed, if causation were a sufficient touchstone, then any debt would confer 'arising in' jurisdiction."). Thus, Defendants' argument fails.

Although the facts underpinning Claim One relate to the events leading up to the bankruptcy case, it has no legal entanglement with the bankruptcy case. Claim One does not stem from the bankruptcy case, nor would it be resolved in a claims-allowance process. Accordingly, the Court finds Count One constitutionally non-core. Similar reasoning applies to the other Fiduciary Breach claims, as discussed below.

### 2.      Counts Two and Three

In Counts Two and Three, the Trust alleges that Defendants breached their fiduciary duties by authorizing executive bonuses in the lead-up to the bankruptcy. These breach of fiduciary claims arise under state law and do not flow from any federal statutory law. Defendants argue that these constitute constitutionally core claims, because the allegations depend on the timing of these payments — right before the bankruptcy. (Defs' Mem. at 4.) However, this factual overlap does not cause a legal overlap between the two. The Trust alleges that Defendants owed a duty to further solely the interests of the shareholders, but that they acted in their own self-interest instead. The timing of the executive payments in relation to the bankruptcy offers factual support for the claim that Defendants acted in their own self-interest, but the timing does not form an element of the claim. Indeed, in support of its claims, the Trust cites acts and omissions by Defendants that exhibit deliberate or reckless indifference to the outcome, including by (a) failing to inform themselves of all material information; (b) failing to identify and explore alternative executive compensation plans; (c) adopting a "we don't care" attitude regarding executive bonuses; (d) enacting a bonus plan outside the bounds of reason; acting without a rational business purpose; (e) permitting the illicit manipulation of the board by self-interested corporate fiduciaries; (f) providing a complete lack of oversight; and (g) furthering their own private interests by authorizing bonus payments days before filing a

chapter 11 bankruptcy. (Am. Compl. ¶¶ 215, 222.) The timing of the payments in relation to the

bankruptcy case forms but one fact that can support whether these actions amount to a breach of

fiduciary duty.

Through these claims, the Trust seeks to recover money on behalf of the estate. It does

not seek to restructure debtor-creditor relations. And, as with Claim One, by seeking to augment

the estate rather than affecting the "creditors' hierarchically ordered claims to a pro rata share of

the bankruptcy res," the Trust brings claims reserved for an Article III court. *Stern*, 564 U.S. at

499. Similarly, these claims would not be resolved in a claims-allowance process. Accordingly,

Counts Two and Three constitute non-core claims.

### 3.    Count Four

In Count Four, the Trust alleges that Defendants breached their fiduciary duty in deciding

whether to authorize TRU to encumber its remaining assets with more than $3.0 billion in

debtor-in-possession ("DIP") financing and not considering other alternatives, including a

structured wind-down or exploring a possible sale of the business. (Am Compl. ¶ 227.)

Defendant argues that this claim stems from the bankruptcy, as the Bankruptcy Court held two

hearings on the motion for DIP financing and entered a Final DIP Order. (Defs' Mem. at 2-3.)

The Trust argues that it attacks Defendant's decision-making process leading up to the vote to

authorize the DIP financing, rather than the events that occurred following the petition. (Trust's

Mem. at 22-23.)

Count Four presents a closer question as to the core/non-core distinction, yet it still

constitutes a non-core claim. First, the Trust brings a claim for breach of fiduciary duty that

flows from state law, rather than bankruptcy law. Specifically, it claims that Defendants

breached their duties of loyalty, candor and good faith by: (a) failing to inform themselves of all

16

reasonably available information before authorizing DIP financing; (b) failing to consider all reasonable alternatives; (c) adopting a "we don't care about the risks" attitude regarding DIP financing; (d) abdicating their duties to reasonably assess the risks and consequences of DIP financing; (e) authorizing a DIP financing option that was outside the bounds of reason; (f) acting without a rational business purpose; (g) permitting the illicit manipulation of the board's deliberative process by self-interested corporate fiduciaries; and (h) providing a complete lack of oversight. (Am. Compl. ¶ 228.) While this claim has a much greater factual entanglement with the bankruptcy case than the other Fiduciary Breach Claims, it still lacks the legal entanglement that drives the core/non-core analysis. *See In re Renewable Energy*, 792 F.3d at 1279-80 (stating that "the only 'intertwining' *Stern* cares about concerns the law, not the facts"). Although facts regarding the bankruptcy will surely arise in adjudicating the claim, they will arise in the context of whether the Trust has met the legal elements of a state law breach of fiduciary claim, removing it from the core jurisdiction of the Bankruptcy Court. Thus, even if this claim arose from the facts of the bankruptcy proceeding, it is not "derived from or dependent upon *bankruptcy law*." *Stern*, 564 U.S. at 498-99 (emphasis added).

The analysis of Count Four resembles the analysis that the Court undertook in *Pulley*, 532 B.R. 12 at 16. There, following the closure of Pulley's bankruptcy case, the bankruptcy court reopened it to allow her to file an adversary proceeding against her student loan holders. *Id.* at 16-17. She brought a claim for equitable estoppel to stop them from collecting on the student loans that had purportedly been discharged in the bankruptcy. *Id.* at 17. The bankruptcy court held a trial and found against ECMC, one of the student loan holders. *Id.* On appeal to the district court, the Court found that the equitable estoppel claim "arises in and is related to Pulley's Bankruptcy Case," because it "does not have any practical existence but for or outside

her bankruptcy as the *sine qua non* of her claim is the Bankruptcy Court's confirmed plan." *Id.* at 19-20. Nevertheless, the Court found that the bankruptcy court improperly entered a final judgment on the claim, because "Pulley's equitable estoppel argument is premised upon Virginia common law and would not necessarily be resolved in the claims allowance process." *Id.* at 24. Therefore, although the claim "flow[ed] from her creditor's actions and went to the heart of the confirmed plan," it did not constitute a constitutionally core claim. *Id.* at 25.

Here, although the facts underpinning Count Four involve the bankruptcy case in that they rely on the DIP Motion filed in the bankruptcy case, they rely on the bankruptcy case even less than the facts of the equitable estoppel claim did in *Pulley*. As in *Pulley*, the Trust's Count Four stems from state law and would not necessarily be resolved in the claims allowance process. Accordingly, the Court finds that the Trust brings a constitutionally non-core claim in Count Four.

### 4.   Counts Five Through Nine

In Counts Five through Nine, the Trust brings state tort law claims on behalf of the Trade Vendors, alleging that Defendants fraudulently and negligently misled the vendors into shipping goods to TRU during the Chapter 11 proceedings without telling the vendors about TRU's liquidity challenges. (Am. Compl. at 107-14.) Defendants argue that these constitute core claims, because they relate to Defendants' post-petition conduct in connection with the bankruptcy, arise in and exist because of the bankruptcy, and concern the interpretation of an order issued by the Bankruptcy Court. (Defs' Mem. at 5.)

As with the Fiduciary Breach Claims, the Vendor Claims flow out of state law rather than any federal statutory scheme. In support of these fraud and negligence claims, the Trust asserts that Defendants misled the Trade Vendors by omitting and failing to disclose material facts,

including that:  (a) by mid-December 2017, Defendants knew that "TRU's holiday results were an utter disaster;" (b) by the end of December 2017, Defendants knew that TRU would not hit certain budget milestones, resulting in the termination of its DIP financing on January 31, 2018; (c) TRU would have no ability to pay for the merchandise that it ordered from the Trade Vendors on credit from December 2017 through March 2018; (d) by mid-February 2018, TRU knew it would soon liquidate; (e) it had the ability to pay for goods that it ordered during the bankruptcy proceeding; (f) the DIP had no material milestones; (g) TRU would have the DIP financing throughout the restructuring process; and (h) TRU had a positive outlook and prepared to emerge from bankruptcy.  (Am. Compl. at 107-14.)  Although these facts concern the Defendants' actions during the bankruptcy proceeding, the Trust's causes of action do not arise out of bankruptcy law.  At bottom, the Trust alleges that Defendants made material misrepresentations with respect to TRU's ability to pay for merchandise.  That this occurred during the bankruptcy proceedings does not alter what the Trust must ultimately prove to prevail.  Accordingly, the Vendor Claims do not stem from bankruptcy.

Additionally, although the Trade Vendors filed proofs of claims against the Debtors to collect unpaid invoices, that does not necessitate a finding that the Trust's Vendor Claims would be resolved in the claims-allowance process.  First, the Bankruptcy Court has already adjudicated these proofs of claim, and it did not resolve the claims.  (Bankr. Dkt. No. 7428 (Order Establishing Administrative Claims Dates)).  Moreover, a "bankruptcy estate's claim against a creditor would necessarily be resolved in the claims allowance process when it shares common questions of fact and law with the creditor's claims and when it seeks to directly reduce or recoup the amount claimed." *ULX Partners, LLC v. Tavenner*, 2021 WL 2188955, at *7 (E.D. Va. May 28, 2021).  The Trust's Vendor Claims do not meet this test, as discussed below.

19

The Trust brings the Vendor Claims against different individuals (Defendants) than the creditors that filed the proofs of claim (the Trade Vendors). Although some factual overlap may exist, the proofs of claim focused on the unpaid invoices, whereas the Vendor Claims focus on the alleged omissions and misrepresentation leading up to the failure to pay. Importantly, the Vendor Claims do not seek to modify the amount claimed in those proofs of claim. Any recovery on the Vendor Claims will not go to a particular unpaid Vendor but, instead, will go to a pool for distribution to all of the Trust's beneficiaries. (Bankr. Dkt. 6925). The Vendor Claims seek to increase the pool of money available to the Trust's beneficiaries. As the Court has previously said, "claims by the bankruptcy estate that seek to augment the estate but do not directly modify the amount claimed do not qualify as a claim to be resolved in ruling on the proof of claim." *ULX Partners*, 2021 WL 2188955, at *7 (internal quotations omitted). The Vendor Claims fit this description and, therefore, do not qualify as claims to be resolved in ruling on the proofs of claim. Accordingly, the Vendor Claims do not constitute core claims.

Throughout their argument that these claims constitute core claims, Defendants consistently aver that the claims relate to and involve the administration of the bankruptcy case. However, that test does not apply in the *constitutionally* core analysis. Applying the correct standard, none of the claims "stem[] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 564 U.S. at 499. Because all of the claims asserted by the Trust constitute non-core claims, the Court will sustain the Trust's objections to the Bankruptcy Court's conclusion that all of the Trust's claims constitute core claims.

### B.      The Right to a Jury Trial Factor

The Bankruptcy Court determined that the Trust "is not entitled to a jury trial on the Fiduciary Breach Claims but does have a Seventh Amendment right to a jury trial in connection

with the Vendor Claims." (R&R at 13.) The Trust objected to the conclusion that it has no right

to a jury trial on the Fiduciary Breach Claims. (Trust's Mem. at 1-2.) Defendants did not object

to the conclusion that the Trust has a right to a jury trial on the Vendor Claims. Accordingly, the

Court will focus its analysis on whether the Trust has a right to a jury on the Fiduciary Breach

Claims. Although Defendants have forfeited any objection to the Bankruptcy Court's

determination with respect to the Vendor Claims, the Court nevertheless will briefly address the

Trust's right to a jury trial on those claims.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in

controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact

tried by a jury, shall be otherwise re-examined in an Court of the United States, than according to

the rules of the common law." Const. amend. VII. However, this guarantee of a jury trial

"applies only to cases at law." *In re Lockheed Martin Corp.*, 503 F.3d 351, 355 (4th Cir. 2007).

It does not apply to cases tried in equity. *Vodusek v. Bayliner Marine Corp.* 71 F.3d 148, 152-53

(4th Cir. 1995) ("While the Seventh Amendment guarantees a jury trial in cases 'at common

law,' no constitutional provision guarantees, or indeed prohibits, jury trials for cases tried in

equity or in admiralty.").

### 1.    Demand for a Jury Trial

Federal Rule of Civil Procedure 38 governs the exercise of a party's Seventh Amendment

right to a trial by jury.[4]  It provides that the "right of a trial by jury as declared by the Seventh

---

[4]      Rule 9015 of the Federal Rules of Bankruptcy Procedure incorporates Rule 38 into the
bankruptcy courts, stating that "Rules 38, 39, 47-49, and 51, F.R.Civ.P., and Rule 81(c)
F.R.Civ.P. insofar as it applies to jury trials, apply in cases and proceedings, except that a
demand made under Rule 38(b) F. R. Civ. P. shall be filed in accordance with Rule 5005." Thus,
the Federal Rules of Civil Procedure govern the demand and waiver of a jury trial in the
adversary proceeding.

Amendment to the Constitution — or as provided by a federal statute — is preserved to the parties inviolate." Fed. R. Civ. P. 38(a).  With respect to demanding a jury trial, a party may demand a jury trial "on any issue triable of right by a jury" by "serving the other parties with a written demand — which may be included in a pleading — no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b)(1).  If a party does not specify the issues that it wishes tried by a jury, then "it is considered to have demanded a jury trial on all the issues so triable." Fed. R. Civ. P. 38(c).  Rule 38 also speaks to waiver:  "A party waives a jury trial unless its demand is properly served and filed.  A proper demand may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d).

Here, the Trust included a demand for a jury in the original complaint that it filed in New York state court on March 12, 2020.  (AP Dkt. No. 10-5 at 6-7).  The Trust included it in the "Demand for Relief," requesting that the court "grant[] a jury trial on all matters subject to a jury trial." (*Id.*)  Further, in the last phrase before the signature block, it stated "**JURY TRIAL DEMANDED**." (*Id.*)  On July 11, 2020, the Trust filed its opposition to Defendants' Motion to Dismiss.  (AP Dkt. 6.)  In its opposition, it stated that "the Trust preserves its right to trial by jury on issues of fact." (*Id.* at 17.)   On September 10, 2020, the Trust filed its First Amended Complaint.  (("First Am. Compl.") (AP Dkt. 47-1).)  The First Amended Complaint included the same two demands for a jury trial as the initial Complaint. (First Am. Compl. at 115-16.)  Then, on April 30, 2021, the Trust filed the Second Amended Complaint, which included the two identical demands for a jury trial.  (Am. Compl. at 115-16.)  Clearly, the Trust demanded a jury trial on all issues so triable in accordance with Rule 38.  And, the waiver and withdrawal provisions of Rule 38(d) do not apply.  Thus, unless the conditions of Rule 39 occurred, its right to a jury trial "is preserved . . . inviolate."

22

Rule 39 states that when a party demands a jury under Rule 38, "[t]he trial on all issues so demanded must be by jury unless: (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." The parties did not stipulate to a nonjury trial, so the first condition does not apply. Therefore, unless the Trust has no federal right to a jury trial on the Fiduciary Breach Claims, then its right to a jury trial "is preserved . . . inviolate."

### 2.     Federal Right to a Jury Trial

Whether a federal right to a jury attaches depends on whether the Trust brings legal or equitable claims in the Fiduciary Breach Claims. The Trust claims that the Fiduciary Breach Claims constitute legal claims, because it seeks legal relief. (Trust's Mem. at 6.) Defendants classify the claims as equitable, but they offer little analysis to support this categorization. (Defs' Mem. at 15-16.)

The Seventh Amendment right to a jury trial applies to legal but not equitable claims. *Granfinanciear, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). The Supreme Court has set forth a two-part inquiry in determining whether the Seventh Amendment provides for a right to a jury trial. First, the court compares "the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* at 42. The next step calls for the court to "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* Here, the Trust relies on the second stage of the analysis, whereas Defendants seemingly advance only the first in their brief. However, "[t]he second stage of the analysis is far more important than the first." *Id.*

Generally, "breach of fiduciary duty claims were historically within the jurisdiction of the

23

equity courts." *Kirgan as trustee of Clarence Manger & Audrey Cordero Plitt Tr. v. Manufacturers & Traders Tr. Co.*, 810 F. App'x 187, 196 (4th Cir. 2020) (citing *Pereira v. Farace*, 413 F.3d 330, 338 (2d Cir. 2005); *Termini v. Life Ins. Co. of N.A.*, 474 F. Supp. 2d 775, 778 (E.D. Va. 2007) ("Such [breach of fiduciary] actions are examined under trust law principles and fiduciary standards, which are within the exclusive jurisdiction of equity courts."). Thus, the first factor weighs against finding a right to a jury trial.

However, the relief sought — the most important factor — weighs in favor of finding the claims legal and, therefore, triable to a jury. The Supreme Court has consistently held that money damages constitute a legal remedy. *See Pernell v. Southall Realty*, 416 U.S. 370 (1974) ("[W]here an action is simply for the recovery . . . of a money judgment, the action is one at law."); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476 (1962) ("Petitioner's contention . . . is that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal. We agree with that contention."); *Gaines v. Miller* 111 U.S. 395, 397-98 (1884) ("Whenever one person has in his hands money equitably belonging to another, that other person may recover it by assumpsit for money had and received. The remedy at law is adequate and complete.") (internal citations omitted).

However, when a claim seeks funds in the form of restitution, that may constitute equitable relief. "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 214 (2002). Equitable relief in that situation takes the form of an imposition of a constructive trust or equitable lien on particular property, whereas legal relief seeks "the imposition of personal liability for the benefits that they conferred upon [defendants]." *Id.* Thus,

24

the distinction lies in whether the remedy seeks money unjustly gained by the defendants (equitable), or funds as a measure of harm to the plaintiff (legal). *Pereira*, 413 F.3d at 340.

Here, the Trust seeks money damages as a measure of the harm that the alleged breaches of fiduciary duty caused TRU. The prayer for relief in each count bears this out. In Count One, the Trust alleges that the "foregoing breaches of duty were the proximate cause, and a substantial factor, in causing TRU (and the creditors of TRU) to suffer losses of at least $17,863,110." (Am. Compl. ¶ 212.) Similarly, in Count Two, the Trust claims that the breach "was the proximate cause, and a substantial factor, in causing TRU (and the creditors of TRU) to suffer losses of more than $16 million." (Am. Compl. ¶ 217.) Likewise, in Count Three, the Trust claims that the breach "was the proximate cause, and a substantial factor, in causing TRU (and the creditors of TRU) to suffer losses of more than $16 million." (Am. Compl. ¶ 225.) Finally, in Count Four, the Trust alleges that "Defendants' breaches of duty were the proximate cause, and a substantial factor, in causing TRU (and the creditors of TRU) to suffer losses in excess of $700 million." (Am. Compl. ¶ 232.) Finally, in the Demand for Relief, the Trust seeks an "award of money damages in an amount sufficient to compensate for the losses resulting from Defendants' wrongful conduct" in addition to an "award of punitive damages." (Am. Compl. at 115.) The Trust seeks no equitable relief. Clearly, the Trust seeks to recover money damages to compensate it for losses suffered as a result of Defendants' actions — the classic form of legal relief. *See Curtis v. Loether*, 415 U.S. 189, 195-96 (1974) ("More important, the relief sought here — actual and punitive damages — is the traditional form of relief offered in the courts of law."). Thus, the more important *Granfinanciera* factor weighs heavily in favor of finding that the Trust brings legal, rather than equitable, claims in the Fiduciary Breach Claims. Accordingly, the right to a jury trial attaches to those claims, absent a waiver.

25

### 3.    Waiver of Jury Trial

The Bankruptcy Court concluded that the Trust waived its right to a jury trial. (R&R at 13.)  In making this conclusion, it adopted its findings in the Memorandum Opinion that it issued on March 31, 2022. Further, the Bankruptcy Court found that its scheduling order's April 29, 2021 deadline to file a "waiver of jury trial or motion re: right to jury trial" barred the Trust from now demanding a jury trial. (Second Bankr. Op. at 9.)  The Trust objects to this conclusion, arguing that it did not need to file another motion after it had demanded a jury trial. (Trust's Mem. at 2-3.)  Defendant urges the Court to adopt the Bankruptcy Court's reasoning. (Defs' Mem. at 10-12.)

Rule 38 provides that "a party waives a right to a jury trial unless its demand is properly served and filed."  Fed. R. Civ. P. 38(d).  As discussed above, the Trust properly served its demand.  Thus, the waiver provision in Rule 38 does not apply.  Instead, once the Trust made its jury demand, it had preserved its right "inviolate" and "the trial on all issues so demanded must be by jury" unless the two conditions that do not apply occurred here. Fed. R. Civ. P. 38, 39. The Rules required nothing else for the Trust to retain its right to a jury trial.

Even if the scheduling order imposed an extra burden on the Trust to preserve its right to a jury trial by April 29, 2021, the Trust met that burden.  On April 10, 2021, after learning that Defendants intended to argue that the Trust had waived its right to a jury trial in the Settlement Agreement, the Trust filed its First Jury Trial Motion, arguing that the Settlement Agreement did not constitute a waiver of its right to a jury trial on the claims brought in the Adversary Proceeding.  The Trust sought an order from the Bankruptcy Court that it had not waived its right to a jury trial on the claims asserted against Defendants and that the Trust had the right to demand a trial by jury.  Defendants opposed, arguing that the Settlement Agreement waived the

right to a jury trial. The Bankruptcy Court agreed with Plaintiffs. On September 3, 2021, it granted the Trust's Motion and ruled that the "Trust is entitled to have a jury on the Complaint." (First Bankr. Op. at 9.) In the accompanying order, the Bankruptcy Court ordered "that the motion of Plaintiff TRU Creditor Litigation Trust requesting a jury trial is GRANTED." Thus, before the deadline, the Trust moved for an order that it had the right to a jury on all counts, meeting any obligation that the scheduling order imposed on it. After the deadline had passed, the Bankruptcy Court ruled that the Trust was entitled to a jury on the Complaint.

Defendants seek to cabin the First Bankruptcy Opinion to a ruling only that the Trust had not waived its right to a jury trial, not that the Trust had a right to a jury trial, despite the Bankruptcy Court explicitly ruling that the "Trust is entitled to have a jury on the Complaint." Even taking this narrow view of the Bankruptcy Court's ruling, this left (1) a properly demanded jury right, (2) that had not been waived, and (3) an expired deadline to raise any other challenges to the jury right. Under the Federal Rules of Civil Procedure, the jury demand remained intact.

On November 23, 2021, anticipating challenges to its right to a jury trial, the Trust filed the Second Jury Trial Motion, asking the Court to answer the question "[i]s the Trust entitled to a jury trial on its breach of fiduciary duty claims" and to enter an order granting a jury trial on all of its counts. (Second Jury Trial Mot. at 5, 12.) Without reaching the merits of the question, the Bankruptcy Court denied the Second Jury Trial Motion as untimely. (Second Bankr. Op. at 9.) Moreover, the Bankruptcy Court determined that, because of the untimeliness, the Trust did not enjoy a right to a jury trial on the Fiduciary Breach Claims. (Second Barnk. Op. at 9.)

The Bankruptcy Court erred in this waiver determination. In considering jury trial waivers, "courts indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy ex rel Bogash*, 301 U.S. 389, 393 (1937). When the Bankruptcy Court denied the

Second Jury Trial Motion as untimely, the parties returned to the status quo before the filing of the Second Jury Trial Motion. As discussed above, before filing the Second Jury Trial Motion, the Trust had an un-waived jury demand and an order from the Bankruptcy Court that the "Trust is entitled to have a jury on the Complaint." The Court can discern no grounds to find that by filing a motion seeking an order that it had a jury trial on the Fiduciary Breach Claims, the Trust upset that status quo and affirmatively waived its right to a jury trial on the Fiduciary Breach Claims. Under Rule 39, only a finding that "there is no federal right to a jury trial" on those claims could have upset the previous status quo (absent a stipulation from the parties). The Bankruptcy Court avoided making that finding, despite the Trust squarely presenting the question to it, leaving the inviolate right to a jury intact.

Moreover, the deadline in the scheduling order supports a finding that the Trust has not waived its right to a jury trial. The deadline required the Trust to file a waiver of a jury trial by April 29, 2021. The Trust had properly demanded a jury trial, but did not waive that right by the deadline to file a waiver. Thus, it had not waived its right to a jury trial.

In support of its argument that the Trust needed to take additional affirmative steps to preserve its right to a jury trial, Defendant cites cases enforcing deadlines to file motions to withdraw the reference. (Defs' Mem. at 11-13.) This argument has two faults. First, the scheduling order did not contain a deadline for a motion to withdraw the reference. Second, preserving a right to a jury trial does not require filing a motion to withdraw the reference. Indeed, a party can never move to withdraw the reference yet still preserve its right to a jury trial by having the bankruptcy court conduct the jury trial. *See* 28 U.S.C. § 157(e) (providing procedure for designating bankruptcy judge to conduct a jury trial). Moreover, a party can preserve its right to a jury trial (with no intention of moving to withdraw the reference) in

28

anticipation that the other party may move to withdraw the reference.

For the reasons above, the Court finds that the Bankruptcy Court erred in its conclusion that the Trust had waived its right to a jury trial on the Fiduciary Breach Claims.

### 4. Vendor Claims

Defendants did not object to the Bankruptcy Court's conclusion that the Trust is entitled to a jury trial on the Vendor Claims. Because Defendants have forfeited their objection to the argument that the Trust has no right to a jury trial on those claims, the Court need not devote significant time to analyzing the right to a jury trial on those claims. However, the Court notes that the analysis above would apply with equal force to those claims. First, the Trust properly demanded a jury trial on those claims under Rule 38. Second, the Court has not made a determination that no federal right to a jury trial attaches to the claims. Nor could it, as the *Granfinanciera* factors again weigh in favor of a jury right, given that the Trust seeks only damages to compensate for the harm caused by Defendants' alleged actions. *See, e.g.*, *Skippy, Inc. v. CPC Intern, Inc.*, 674 F.2d 209, 214 (4th Cir. 1982) ("When the only remedy sought for fraud is damages, the action is legal in nature and there is a right to jury trial.").

Finally, the right to a jury trial on the Vendor Claims has not been waived. The Bankruptcy Court has already determined that the Settlement Agreement did not waive the right to a jury on those claims — the only waiver argument that Defendants made before the deadline to do so. Under the Bankruptcy Court's scheduling order, the time has long passed for Defendants to raise any additional grounds for finding that the Trust has waived its right to a jury trial on these claims.[5] The Scheduling Order set a deadline of April 29, 2021, to file a "waiver

---

[5]    In any event, the Court finds that Defendants' additional waiver arguments lack merit. For example, the fact that the vendors submitted proofs of claim does not result in a jury waiver, because the proofs of claim differ from the Vendor Claims. *See Lu v. Grant (In re Sunshine*

of jury trial or motion re: right to jury trial." Unlike the preservation of a jury demand, which did not require additional motions before the deadline, the deadline required Defendants to raise any challenges to the Trust's jury demand or risk forfeiting those challenges. Thus, Defendants have waived the other possible grounds for a jury trial waiver that the R&R identifies but does not rule upon.

Because the Court finds that the Trust has a right to a jury trial on all of its claims, this factor weighs in favor of withdrawing the reference.

### C.     The Remaining Withdrawal Factors

The remaining factors regarding the withdrawal of the reference do not weigh as heavily in favor of or against withdrawal as the core/non-core and right to a jury factors. In a footnote, the Bankruptcy Court concluded that the remaining factors weighed against withdrawing the reference. (R&R at 11, n.31.) The Trust objects to those findings. (Trust's Mem. at 24.) The Bankruptcy Court suggests that, should the Court withdraw the reference, it wait until after the resolution of the pending motions for summary judgment. (R&R at 13.) The Trust agrees with this timing. (Trust's Mem. at 17.) Defendants argue that the reference should remain intact throughout the proceedings. (Defs' Mem. at 2.)

With respect to the uniform administration of bankruptcy proceedings factor, the Court finds this factor neutral. The underlying bankruptcy proceedings have completed, leaving only this adversary proceeding for resolution. Thus, these proceedings would not affect any other bankruptcy proceedings. To the extent that the Bankruptcy Court's knowledge of the case could

---

*Trading & Transp. Co.*), 193 B.R. 752, 755 (Bankr E.D. Va. 1995) (noting that "the filing of an administrative claim does not waive a right of jury trial when a party demands a jury trial in an unrelated proceeding"). The vendors filed proofs of claims for unpaid invoices, similar to breach of contract actions, whereas the Vendor Claims sound in tort and result from alleged misstatements and omissions.

help the uniformity of the proceedings, this only weighs slightly against withdrawing the reference. First, this consideration finds better footing in the judicial economy factor. Second, by withdrawing the reference only after the resolution of the summary judgment, the Bankruptcy Court's familiarity with the case will remain in good use until trial preparations begin.

With respect to expediting the bankruptcy process and promoting judicial economy, the Court also finds this factor neutral. This Court can hold a trial on any claims that survive summary judgment in this matter in September, while the Bankruptcy Court has indicated that it can conduct a trial in November. Thus, withdrawing the reference would expedite the bankruptcy process. However, judicial economy weighs against withdrawing the reference, given the Bankruptcy Court's familiarity of the case. The Court can still capture the main benefits of that familiarity by having the Bankruptcy Court conduct all pretrial matters through summary judgment. Thus, on balance, this factor neither favors nor weighs against withdrawing the reference.

With respect to the efficient use of the debtors' and creditors' resources, the Court also finds this factor neutral. The parties will expend resources on a trial regardless of whether the Court withdraws the reference. To the extent that the Bankruptcy Court's familiarity with the case could save the parties from having to educate the District Court on the facts of the case, the District Court's expertise regarding jury trials and ability to efficiently conduct a jury trial offsets those savings.

The Court also finds the forum-shopping factor to be neutral. Withdrawing the reference after summary judgment would still leave the Bankruptcy Court in the position to make crucial case-dispositive and pretrial decisions, largely negating any benefit that the Trust could seek from a different forum. Rather, the Trust would obtain a "a more expeditious resolution of [its]

31

claims," which "is not the type of forum shopping that would prejudice" Defendants. *Arrowsmith v. Mallory (In re Health Diagnostic Lab, Inc.)*, 2017 WL 3084626, at \*4, n.7 (E.D. Va. July 19, 2017).

The balance of factors favor withdrawal of the reference. Indeed, the Court has determined that the Trust brings non-core claims to which it has the right to a jury trial. As a practical matter, the Bankruptcy Court cannot conduct a jury trial over those matters absent consent of the parties. Thus, absent consent, the reference would need to be withdrawn.[6] However, as the Bankruptcy Court recognized, withdrawing the reference now "would be premature considering the pending summary judgment motion." (R&R at 13 (citing *Tyler v. McLane Foodservice, Inc. (In re QSM, LLC)*, 453 B.R. 807, 808 (E.D. Va. 2011)).

Finally, the Bankruptcy Court recommends that the Trust be allowed to withdraw its Motion to Designate. (R&R at 14.) Defendants agree with this recommendation. (Defs' Mem. at 20.) Because the parties are in agreement, and the Court finds good cause, the Court will allow the Trust to withdraw its Motion to Designate. Likewise, the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law (ECF No. 19) and Defendants' Objections (ECF No. 20) thereto are hereby DENIED. The parties may renew their request to designate the Bankruptcy Court to conduct the jury trial in this matter following the resolution of the pending motion for summary judgment by the Bankruptcy Court.

The Court notes that nothing herein constitutes an assessment of the merits of the Trust's claims. The nature of the claims brought, rather than the strength of the claims, drives the entire analysis above. The Court need not, and did not, delve into the merits of the Trust's claims to

---

[6]     At this juncture, given that summary judgment may obviate the need for a trial altogether, the Court need not determine whether the parties have consented to the Bankruptcy Court conducting a jury trial in this matter.

resolve the questions presented.

## IV.  CONCLUSION

For the reasons stated above, the Court will SUSTAIN the Trust's Objection to the Report and Recommendation (ECF No. 53). Specifically, the Court sustains the Trust's objection to the Bankruptcy Court's conclusion that the Trust does not have a right to a jury trial on the Fiduciary Breach Claims. The Court finds that the Trust has the right to a jury trial on all counts that may survive summary judgment. Further, the Court finds that all of the Trust's claims constitute constitutionally non-core claims. Additionally, the Court sustains the Trust's objection to the Bankruptcy Court's conclusion that the reference should not be withdrawn. The Court finds that cause exists to withdraw the reference to the Bankruptcy Court following the resolution of the summary judgment motion, absent the consent of the parties to Bankruptcy Court jurisdiction.

Within seven days following the resolution of the pending summary judgment motion by the Bankruptcy Court, the parties shall each file a notice with the Court indicating: (1) whether the party consents to Bankruptcy Court jurisdiction for the trial of this case, or (2) whether the party moves to withdraw the reference to the Bankruptcy Court. If both parties do not consent to the Bankruptcy Court conducting the trial, and a party moves to withdraw the reference, the Court will withdraw the reference. Should the Court withdraw the reference in this matter, it will enter a scheduling order and conduct the jury trial in this case with jury selection to commence at 9:30 a.m. on September 8, 2022, and to continue with opening statements and testimony beginning on September 12, 2022, and continuing until October 7, 2022. A final pretrial conference will be held on August 30, 2022.

Finally, the Trust's Motion to Specially Designate Bankruptcy Judge to Preside Over

Jury Trial (ECF No. 16) will be DENIED WITHOUT PREJUDICE. Likewise, the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law (ECF No. 19) and Defendants' Objections thereto (ECF No. 20) will be DENIED.

An appropriate Order shall issue.

Let the Clerk file a copy of this Order electronically, forward a copy to Bankruptcy Judge Phillips and notify all counsel of record.

It is so ORDERED.

/s/

David J. Novak
United States District Judge

Richmond, Virginia
Dated: May 11, 2022

34